IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ERIK SABOL and REBECCA ODOM     : CIVIL ACTION
                                :
     vs.                        :
                                : NO. 09-CV-3439
APOLLO GROUP, INC., and         :
UNIVERSITY OF PHOENIX, INC.     :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                    **May 12, 2010**

Plaintiffs Erik Sabol and Rebecca Odom[1] instituted this lawsuit "individually and on behalf of all other similarly situated employees" to recover unpaid overtime compensation from the defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §201, *et. seq.*, ("FLSA"). By way of the motion now pending before the Court, Plaintiffs move for conditional certification of a collective class. For the reasons discussed *infra*, the motion shall be granted.

**Factual Background**

According to the allegations in the Plaintiffs' Complaint, Defendant Apollo Group, Inc. is an Arizona corporation with its principal place of business in Phoenix, Arizona. Defendant University of Phoenix is a subsidiary of the Apollo Group and

---

[1] Initially the Collective Action Complaint that was filed on July 30, 2009, included two additional plaintiffs, John Lyons and Geraldine Andrews. Via stipulation and order dated January 28, 2010, Ms. Andrews and Mr. Lyons voluntarily dismissed their complaints and withdrew their consents to participate as parties in this action.

maintains its principal place of business at the same address as does Apollo. The defendants are in the business of providing undergraduate and graduate courses in a variety of subjects to students over the internet and have operations and "campuses" at a number of locations throughout the United States including several in the greater Philadelphia area. (Complaint, ¶s 2, 5, 15-17).

Plaintiffs Erik Sabol and Rebecca Odom were both employed by Defendants at their location in Levittown, Pennsylvania. Mr. Sabol, who first began working for the University of Phoenix in October, 2005 in Plantation, Florida, was employed as both an academic counselor and an enrollment counselor before his employment with Defendants was terminated on May 21, 2009.[2] (Complaint, ¶s 19-20). Ms. Odom was employed by the defendants as an enrollment counselor only at the Levittown location from "approximately February 2008 until January 23, 2009," when she resigned. (Complaint, ¶s 21-22). The complaint goes on to allege that the plaintiffs regularly worked in excess of forty (40) hours per week, often nearly 50 hours per week and that they worked these overtime hours "with the knowledge, permission, and

---

[2] Mr. Sabol avers that he worked at the Florida location from October 2005 until February 2007, when he moved to the Levittown, Pennsylvania site. (Complaint, ¶19). Although the complaint in this case was originally filed on behalf of academic and enrollment counselors, very recently on April 28, 2010, the parties stipulated to the dismissal of claims related to academic counselors. Accordingly, Plaintiffs have likewise effectively withdrawn the portion of the within motion which seeks to certify a collective class of academic counselors.

2

mandate of their superior(s)." (Complaint, ¶s 27-28). More specifically, it is alleged that Plaintiffs' superiors consistently advised them that if they had to work extra hours to meet the companies' performance goals, they should do so but they would not be compensated for any time spent working more than 40 hours. In addition, the plaintiffs were routinely required by their supervisors to attend lunchtime training sessions for which they were never compensated. (Complaint, ¶s 29-30).

Enrollment counselors at the University of Phoenix were required to log a certain number of hours on the phone each day, enroll and/or re-enroll a set number of students per month and secure a certain number of referrals for potential students each month. Plaintiffs submit that because of the nature of their other job responsibilities, they were forced to work overtime hours in order to accomplish these objectives. They further submit that these positions are/were not exempt from the overtime requirements under the FLSA. (Complaint, ¶s 35-37). Because of the similarities which Plaintiffs believe they have with other present and former enrollment counselors, they seek to prosecute their FLSA claims as a collective action on behalf of:

> All persons during the applicable statutorily defined period who: (i) are/were current or former ... enrollment counselors employed by Defendants; (ii) are/were not paid for all hours worked in a given workweek; (iii) are/were not paid overtime compensation at a rate not less than one and one-half (1.5) times the rate at which they are employed for work performed beyond the forty (40) hours work week; and (iv) choose to opt-in to this action.

(Complaint, ¶ 44). Plaintiffs now move, pursuant to §216(b) to conditionally certify the foregoing collective class.

**Conditional Collective Class Certification Standards**

In 1938, Congress enacted the Fair Labor Standards Act to eliminate conditions -- substandard wages and excessive hours -- perceived as detrimental to the standard of living and general well-being of workers. Woodard v. Fed Ex Freight East, Inc., 250 F.R.D. 178, 184 (M.D. Pa. 2008), citing 29 U.S.C. §202(a). In furtherance of that goal, the FLSA mandates the payment of additional compensation to employees at the rate of one and one-half times the regular rate for all work performed in excess of forty hours in any one work week unless an employee is working in an "exempt" position. See, 29 U.S.C. §207(a). Section 216(b) of the FLSA in turn provides for the commencement of a cause of action against an employer who violates Section 207 by an individual employee on behalf of themselves and/or on behalf of all other similarly situated employees:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. ...

4

It is generally recognized that "§216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated" effectively grants the court "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). This authority extends to court involvement in the notice process, which should begin early, at the point of the initial notice, rather than at some later time in order to realize the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action. Id., 493 U.S. at 171, 172, 110 S. Ct. at 487; Lugo v. Farmer's Pride, No. 07-CV-0749, 2008 U.S. Dist. LEXIS 17565 at *6-*7 (E.D. Pa. March 7, 2008).

Although the term "similarly situated" is nowhere defined in the FLSA and neither the Third Circuit nor the Supreme Court has provided guidance on how the "similarly situated" requirement of §216(b) should be applied, district courts in the Third Circuit generally agree that plaintiffs must allege that putative class members suffered injury as a result of a policy of an employer, which affected all class members in a similar fashion or that they were "employed under the same terms and conditions."

5

Bredbenner v. Liberty Travel, Inc., No. 09-CV-0905, 2009 U.S. Dist. LEXIS 67122 at *2 (D. N.J. July 31, 2009), citing Felix de Ascencio v. Tyson Foods, 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001) and Goldman v. Radio Shack Corp., No. 03-CV-0032, 2003 U.S. Dist. LEXIS 7611 at *8 (E.D. Pa. April 16, 2003); Woodard v. FedEx Freight East, Inc., 250 F.R.D. at 190-191, quoting 2 Les A. Schneider & J. Larry Stine, *Wage and Hour Law: Compliance and Practice* §20.19.50.

In undertaking their deliberations as to whether or not the "similarly situated" requirement has been satisfied, the district courts in this Circuit have developed a "two-stage test." Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439, 461 (W.D. Pa. 2007); Villanueva-Bazalda v. Trugreen Ltd. Partners, 479 F. Supp. 2d 411, 414 (D. Del. 2007), citing Morisky v. Public Service Electric & Gas Co., 111 F. Supp. 2d 493 (D. N.J. 2000). In the first, or notice stage, the court makes a preliminary inquiry into whether the plaintiff's proposed class is one of similarly situated members and thus determines whether notice should be given to potential class members. Kronick v. bebe Stores, Inc., No. 07-CV-4514, 2008 U.S. Dist. LEXIS 78502 at *3 (D. N.J. Oct. 2, 2008); Ellis, supra. As at least one court has noted, "in order to serve the objectives of the collective action, district courts have allowed the conditional certification of a class of putative plaintiffs before

significant discovery takes place because the statute of limitations continues to run on unnamed class members' claims until they opt into the collective action." Altenbach v. The Lube Center, No. 1:08-CV-2178, 2009 U.S. Dist. LEXIS 106131 at *3 (M.D. Pa. Nov. 13, 2009). See also, 29 U.S.C. §256; Perella v. Colonial Transit, Inc., 148 F.R.D. 147, 149 (W.D. Pa. 1991).

However, "courts in our Circuit differ as [to] the requirements of the first stage." Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 62 (E.D. Pa. 2009). See Also, Williams v. Owens & Minor, Inc., No. 09-CV-742, 2009 U.S. Dist. LEXIS 102304 at *6 (E.D. Pa. Oct. 9, 2009) and Bredbenner, supra, (same). "Some courts have determined that plaintiffs need merely allege that the putative class members were injured as a result of a single policy of a defendant employer," ... "[w]hile other courts have applied a stricter, although still lenient, test that requires the plaintiff to make a modest, factual showing[3] that the similarly situated requirement is satisfied." Pereira, 261 F.R.D. at 62-63, quoting, *inter alia*, Bosley v. Chubb Corp., No. 04-CV-4598, 2005 U.S. Dist. LEXIS 10974, at *7-9 (E.D. Pa. June 3, 2005); Goldman v. RadioShack, No. 03-CV-0032, 2003 U.S. Dist. LEXIS 7611 at *27 (E.D. Pa. Apr. 16, 2003) and Mueller v. CBS,

---

[3] At least one court in this Circuit has observed that "to make a meaningful decision about whether certain people are similarly situated, this Court must have, as a factual foundation, information about who is in the potential class and the basis for inferring that the potential members are similarly situated." Armstrong v. Weichert Realtors, No. 05-3120, 2006 U.S. Dist. LEXIS 31351 at *3 (D. N.J. May 19, 2006).

7

Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001); Bredbenner, 2009 U.S. Dist. LEXIS 67122 at *3-4.[4] At all times, Plaintiff bears the burden of satisfying the similarly situated standard. Burkhart-Deal v. CitiFinancial, Inc., No. 07-1747, 2010 U.S. Dist. LEXIS 9534 at *3 (W.D. Pa. Feb. 4, 2010); Garcia v. Freedom Mortgage Corporation, No. 09-2668, 2009 U.S. Dist. LEXIS 103147 at *5 (D. N.J. Nov. 2, 2009). Presumably because of the threshold requirement's leniency, the initial determination usually results in conditional certification. See, Burkhart-Deal, at *4; Kronick, 2008 U.S. Dist. LEXIS at *3-4; Woodard, 250 F.R.D. at 191.

In the second stage, which takes place after discovery is complete, the court conducts "a factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." Williams v. Owens & Minor, Inc., supra, quoting Lugo v. Farmer's Pride, 2008 U.S. Dist. LEXIS at *3. At this stage, the court has more

---

[4] In Pereira, we were "faced with a unique situation wherein extensive discovery ha[d] been undertaken, but ha[d] been limited to a cross section of the universe of discovery and [was] not yet closed." 261 F.R.D. at 63. Despite the fact that discovery was beyond the initial stages, we did not find that enough discovery had been performed to merit applying the second step inquiry; however we did apply the slightly stronger "modest factual showing standard." Id. In fact, it seems to be the trend in this Circuit to require "some modest evidence, beyond pure speculation, that the employer's alleged policy affected other employees." Kronick, 2008 U.S. Dist. LEXIS at *6, quoting Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 U.S. Dist. LEXIS 21010 at *3 (E.D. Pa. Nov. 13, 2003) and citing Dreyer v. Altchem Environmental Services, Inc., No. 06-2393, 2006 U.S. Dist. LEXIS 93846 at *2 (D. N.J. Dec. 12, 2006).

information before it, and thus applies a stricter standard and a higher level of proof to determine whether the collective action members are "similarly situated" and thus can proceed to trial as a collective action. Id.; Evancho v. Sanofi-Aventis, U.S., Inc., No. 07-2266, 2007 U.S. Dist. LEXIS 93215 at *8 (D. N.J. Dec. 18, 2007). Thus, after such discovery, a district court may revoke conditional certification, if the proposed collective class does not meet the FLSA's similarly situated requirement. See, Ruehl v. Viacom, Inc., 500 F.3d 375, 388-389 (3d Cir. 2007); Burkhart-Deal, 2010 U.S. Dist. LEXIS at *5. Although a determination as to whether class members are similarly situated is always fact-specific, potential collective action members are not "similarly situated" as to FLSA status when that status may differ depending on their job responsibilities and duties. Evancho, at *9; Sperling v. Hoffman-LaRouche, Inc., 118 F.R.D. 392, 407 (D. N.J. 1998).

## Discussion

In applying the preceding legal principles to the plaintiff's motion in the instant case, we find that a sufficient showing has been made to warrant the granting of conditional certification. Attached to the within motion as Exhibit "C" is a position classification description for the enrollment counselor position which enumerates some eight complex functions which individuals holding those jobs are expected to perform

9

within an 8-hour work day. Among those duties are "recruit[ing] students for graduate and undergraduate programs by calling on prospective students, disseminating University course information and enrolling students..., conduct[ing] student appointments to disseminate course and program information ... , advising students or potential students with respect to admissions, degree options, requirements and progress and providing information on university policy, practices and rules, ... verify[ing] enrollment status to ensure students are eligible for admission, ... monitoring attendance, academic and enrollment progress, ... participat[ing] in preparation of the initial calendar for students, ... and resolv[ing] student complaints to ensure resolution." Enrollment counselors are categorized as "salaried non-exempt." (Exhibits "D" and "E").

In addition to the forgoing written job descriptions, both of the plaintiffs testified that their managers, Anjanette Briggman, Elisha Maneth-Lapides, Tiffany Weber, Ellis Stone and Natalie Minot told them that they had certain goals to meet and that they didn't care how they met them. Because it was difficult to accomplish these goals within the confines of an 8-hour workday, Plaintiffs testified that University of Phoenix enrollment counselors would regularly work on paperwork or participate in "lunch and learn" training sessions while they ate lunch, would

consistently come in before 9 a.m. or stay after 6:15 p.m., and that they commonly worked on Saturdays as well. At various points, when someone would ask whether they were being paid overtime for their "lunch and learn" sessions or if they would be paid overtime for coming in on a Saturday, the managers would tell them that wasn't the way it worked or "No, but you're free to come in and work." Mr. Sabol stated that he and most of the other enrollment counselors with whom he worked routinely worked past 6:15 p.m.; those people who left at 6:15 got fired.

Mr. Sabol also testified that he knew that enrollment counselors at other campuses were also working overtime hours from the time and phone logs that were accessible to everyone. Those logs would reflect when those counselors came in to work and when they left and would show people logged in as early as 8 a.m. until as late as 9 or 9:30 p.m. Both Mr. Sabol and Ms. Odom stated that they also would hear other counselors talking about the number of hours they worked during regional training sessions and conference calls with the entire team nationwide. They would also see people at their desks at night when he was leaving. In her deposition, Rebecca Odom identified some ten other enrollment counselors who worked with her at the Levittown location who worked overtime hours without receiving overtime compensation. Although the named plaintiffs' testimony on how much unpaid overtime enrollment counselors at locations outside of the

11

greater Philadelphia area may have worked is equivocal, they have annexed copies of complaints filed in other state and federal district courts against the defendants which include allegations that these same defendants have failed to pay overtime to enrollment counselors or pay enrollment counselors for all of the hours which they spent working on behalf of the defendants. (Exhibits "G," "H," "I," and "J" to Plaintiffs' Motion for Conditional Class Certification). Given the low evidentiary threshold required for the first stage of the certification inquiry, we find that this evidence is sufficient to justify a conditional grant of certification.

We do note that in response to the plaintiffs' motion, Defendants have provided copies of their Employee Handbooks for 2006-2009, all of which provide for ½ hour unpaid meal breaks, and one paid 15 minute break for every four hours of work per day. The handbooks further provide for the payment of overtime compensation to all non-exempt employees who work in excess of forty hours in any one week at the rate of 1 ½ times their regular rate of pay for all hours over 40, and dictate that overtime is to be paid for required attendance at evening or weekend meetings, workshops, etc. if that required attendance puts the employee over the requisite 40 hours. (Exhibits "2," "3," "4," and "5"  And, while Defendants have produced records demonstrating that Mr. Sabol and Ms. Odom, among other employees

were paid overtime, both of the named plaintiffs testified that overtime compensation was paid rarely and only when approved in advance by their supervisors.  This prior approval requirement is also clearly stated in the employee handbooks.  As we recently observed in Pereira, "[h]owever, in this initial stage, such [corporate] policies are not dispositive of collective certification and this Court will not deny certification based on evidence of Defendant's official policy against such work." Pereira, 261 F.R.D. at 67, citing Chabrier v. Wilmington Finance, Inc., No. 06-4176, 2006 U.S. Dist. LEXIS 90756 at *9 (E.D. Pa. Dec. 13, 2006).

For all of the foregoing reasons, we shall grant the plaintiffs' motion for conditional certification of a collective class of present and/or former enrollment counselors as requested and pursuant to the attached order.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ERIK SABOL and REBECCA ODOM      : CIVIL ACTION
                                 :
     vs.                         :
                                 : NO. 09-CV-3439
APOLLO GROUP, INC., and          :
UNIVERSITY OF PHOENIX, INC.      :
```

### ORDER

AND NOW, this   12TH   day of May, 2010, upon consideration of Plaintiffs' Motion for Conditional Certification of Collective Class (Doc. No. 24) and Defendants' Response(s) in Opposition thereto, it is hereby ORDERED that the Motion is GRANTED and this case is CONDITIONALLY CERTIFIED as a COLLECTIVE ACTION pursuant to 29 U.S.C. §216(b).

IT IS FURTHER ORDERED that Plaintiffs' attorneys are AUTHORIZED to provide Court-supervised notice to all potential collective class members concerning the case and their right to participate by "opting in" as plaintiffs. The proposed class is defined as including:

> All persons who are/were employed as enrollment counselors by Defendants who are/were not paid overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they are/were employed for work performed beyond the forty (40) hours per week work week at any time from the date three (3) years prior to the mailing date of the Notice to the present.

IT IS STILL FURTHER ORDERED that Defendants shall provide to

Plaintiffs' attorneys with names and last known contact information of all potential class members and the addresses of all of Defendants' employment locations to facilitate the providing of this notice.

                                BY THE COURT:


                                <u>S/J. CURTIS JOYNER         </u>
                                J. CURTIS JOYNER,       J.